**FILED - GR**
January 11, 2022 1:08 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW   SCANNED BY: /b / 1/11

UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA, <u>ex rel.</u>
MACKINAC CENTER FOR PUBLIC
POLICY,

                Plaintiff,

vs.

THE MICHIGAN EDUCATION
ASSOCIATION, and THE MICHIGAN
EDUCATION SPECIAL SERVICES
ASSOCIATION,

             Defendants.

**1:22-cv-28**

**Hala Y. Jarbou**
**U.S. District Judge**

CASE NO.

JUDGE

**COMPLAINT AND DEMAND FOR
JURY TRIAL
FILED IN CAMERA AND UNDER
SEAL PURSUANT TO 31 U.S.C.
§3730(b)(2)**

---

Plaintiff-Relator The Mackinac Center for Public Policy ("The Mackinac Center"), on behalf the United States of America, for its Complaint against Defendants, The Michigan Education Association (the "MEA") and The Michigan Education Special Services Association ("MESSA"**)**, states the following:

## I.   INTRODUCTION

1.     This is an action to recover damages and civil penalties on behalf of the United States of America arising from false statements and claims made by Defendants or their agents and employees in violation of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "FCA").

2.     This action seeks to recover money lost when the Defendants fraudulently obtained millions of dollars in forgivable federal loans distributed under the Paycheck Protection Program (the "PPP").

3.      The PPP is a loan program created by the federal Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020). The purpose of the PPP was to help certain businesses, self-employed workers, sole proprietors, and non-profit organizations continue paying their workers in spite of economic difficulties and uncertainties created by COVID-19.

4.      The CARES Act clearly stated which types of employers were eligible to apply for PPP loans. Furthermore, the United States Small Business Administration ("SBA"), which was responsible for administering the PPP program, published interim final rules, FAQs, and borrower application forms that further clarified which employers were eligible for PPP loans.

5.      Non-profit corporations registered under sections 501(c)(5) and 501(c)(9) were not among the employers eligible to receive PPP loans.

6.      The MEA is a 501(c)(5) corporation, and MESSA is a 501(c)(9) corporation. Thus, Defendants were not eligible to receive PPP loans.

7.      Nonetheless, Defendants submitted applications to the SBA in which they affirmatively certified that they *were* eligible to receive PPP loans.

8.      As a direct result of their false and fraudulent statements, Defendants collectively obtained more than $12 million in PPP loans.

9.      As a direct result of the Defendants' false and fraudulent statements, the United States Government paid fees to process the Defendants' fraudulent loan applications.

10.     In so doing, Defendants clearly and undeniably violated the False Claims Act, entitling the United States Government to statutory penalties and treble damages.

## II.   THE PARTIES

11.     Plaintiff-Relator The Mackinac Center is a research and educational institute that advances the principles of free markets and limited government. The Mackinac Center is a

Michigan non-profit corporation registered under 501(c)(3) of the Internal Revenue Code.  The Mackinac Center's registered office is in Midland, Michigan.

12.     The Michigan Education Association is a labor union representing about 120,000 teachers, education support professionals and higher-education employees throughout the state of Michigan.  The MEA is a domestic non-profit corporation registered under section 501(c)(5) of the Internal Revenue Code.  The MEA's registered agent is Michael Shoudy, and the MEA's registered office is located at 1350 Kendale Blvd, East Lansing, MI 48823.

13.     The Michigan Education Special Services Association is a voluntary employees' benefit association that provides insurance benefits to its members.  MESSA is a domestic nonprofit corporation registered under section 501(c)(9) of the Internal Revenue Code. MESSA's registered agent is Ross J. Wilson, and whose registered office is located at 1475 Kendale Blvd, East Lansing, MI 48823.

## III.   JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

15.     This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732 because Defendants reside and transact business in this judicial district, and because Defendants engaged in an act proscribed by 31 U.S.C. § 3729 in this judicial district by knowingly presenting false or fraudulent claims for payment or approval, and/or knowingly making false records or statements material to false or fraudulent claims.

16.     Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because both Defendants reside in and transact business in this judicial district, and

because a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

## IV.    THE PPP LOAN PROGRAM

17.    The Paycheck Protection Program (the "PPP") is a loan program created by the federal Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, § 1102, 134 Stat. 286–294 (2020).  Although the CARES Act was amended in May 2020 and on multiple occasions thereafter, the Defendants' violations of the False Claims Act occurred in April 2020, and thus all citations to the CARES Act in this Complaint refer to the CARES Act as originally enacted on March 21, 2020.

### A. <u>Overview of the PPP</u>

18.    Congress created the PPP to help certain businesses, self-employed workers, sole proprietors, and non-profit organizations continue paying their workers in spite of the economic hardships and uncertainty created by COVID-19.   To that end, Congress appropriated $349,000,000 for the PPP loan program in the CARES Act.  *Id.* at § 1107(a)(1), 134 Stat. 301.

19.    The CARES Act placed the task of administering many aspects of the PPP on the United States Small Business Administration (the "SBA").  The SBA published interim final rules relating to the PPP on April 2, 2020, which had an effective date of April 15, 2020. (**Exhibit 1**)  The SBA also published a Borrower Application Form on April 2, 2020 (**Exhibit 2**), various FAQs, and other informational and governing documents on its website.  *See https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program* (last accessed on January 4, 2022).

20.    Under the PPP, eligible employers could apply for loans worth up to two months' of their average monthly payroll costs from the last year, plus an additional 25% of that amount.

CARES Act, Pub. L. No. 116-136, § 1102(a)(2)(E), 134 Stat. 289 (2020).  All loans were subject to a $10 million cap.  *Id.*

21.     Eligible employers could apply for a PPP loan by filling out the SBA's Borrower Application Form and submitting it to an SBA-approved lender.  (**Exhibit 2**).  If the application was approved, the lender would issue the approved loan amount to the applicant.  Each loan issued under the PPP was guaranteed by the SBA.  CARES Act, Pub. L. No. 116-136, at § 1112(a)(1), 134 Stat. 309 (2020).

22.     When the lender disbursed payment under the program, the lender submitted SBA Form 1502 to the SBA seeking a payment of PPP Processing fees. SBA Procedural Notice No. 5000-20091 issued February 8, 2021 (**Exhibit 3**).

23.     For First Draw PPP Loans made before December 27, 2020, the SBA paid the lender a one percent (1%) processing fee for loans of at least $2,000,000. *Id.* at 1.

24.     Recipients who used the PPP loan money for specified purposes and who met certain requirements could apply for loan forgiveness through their lender.  The full loan amount would be forgiven as long as:

> • The loan proceeds are used to cover payroll costs, and most mortgage interest, rent, and utility costs over the 8 week period after the loan is made; and

> • Employee and compensation levels are maintained

> Paycheck Protection Program (PPP) Information Sheet: Borrowers (published 3/31/2020) (available at https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf); *See also* CARES Act, Pub. L. No. 116-136, § 1106(b), (d), 134 Stat. 298–299 (2020)

25.     If the loan was forgiven, the SBA would issue payment to the lender for the amount of the forgiven loan.  *Id.* at § 1106(c)(3), 134 Stat. 298.

26.     Recipients who were not eligible for complete loan forgiveness were subject to a 1% interest rate and a 2-year repayment requirement. Paycheck Protection Program (PPP) Information Sheet: Borrowers (published 3/31/2020) (available at https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf).

**B.   Eligibility to Participate in the PPP Loan Program was Limited to Select Entities**

27.     Only the following organizations were eligible to receive PPP loans under the CARES Act as originally passed:

- "small business concerns, [and] any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) … if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of…(I) 500 employees; or (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal  concern operates"  (Pub. L. No. 116-136, § 1102(a)(2)(D)(i), 134 Stat. 288);

- "sole proprietors, independent contractors, and self-employed individuals" who met certain requirements (*Id.* at § 1102(D)(ii)); and

- "[b]usiness concerns with more than 1 physical location … that employ[] not more than 500 employees per physical locations of the business concern and that [are] assigned a North American Industry Classification

System code beginning with 72 at the time of disbursal..." could also apply for PPP loans (*Id.* at § 1102(D)(iii)).[1]

28.     Importantly, the CARES Act defines "non-profit organizations" as "**an organization that is described in section 501(c)(3) of the Internal Revenue Code of 1986 and that is exempt from taxation under section 501(a) of such Code.**" *Id.* § 1102(a)(2)(A)(vii), 134 Stat. 286 (emphasis added).

29.     The SBA included the following statement regarding eligibility in its interim final rule published April 15, 2020, reiterating that only the following entities were eligible for PPP loans:

> a. Am I eligible?
>
> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
> i. You are:
> A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
> B. A tax-exempt nonprofit organization described in section

---

[1] Only businesses in the accommodation and food services industry are assigned a NAICS code beginning with 72.

501(c)(3) of the Internal Revenue Code
(IRC), a tax-exempt veterans
organization described in section
501(c)(19) of the IRC, Tribal business
concern described in section 31(b)(2)(C)
of the Small Business Act, or any other
business; and
ii. You were in operation on February
15, 2020 and either had employees for
whom you paid salaries and payroll
taxes or paid independent contractors,
as reported on a Form 1099–MISC.
You are also eligible for a PPP loan if
you are an individual who operates
under a sole proprietorship or as an
independent contractor or eligible self-
employed individual, and you were in
operation on February 15, 2020.

SBA Interim Final Rule, published April 15, 2020, located at 13
CFR          Part          120,          available          at
https://home.treasury.gov/system/files/136/PPP--
IFRN%20FINAL.pdf

30.     Finally, the SBA's borrower application form also made it clear that only certain
types of entities were eligible for PPP loans.  The Borrower Application Form available in April
of 2020 required applicants to "check" a box listing what type of entity they were.  The only
available selections were the following:

| Check One: | ❏ Sole proprietor  ❏ Partnership  ❏ C-Corp  ❏ S-Corp  ❏ LLC ❏ Independent contractor  ❏ Eligible self-employed individual ❏ 501(c)(3) nonprofit  ❏ 501(c)(19) veterans organization ❏ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ❏ Other |
| --- | --- |

**(Exhibit 2)**

31.     The CARES Act, the SBA interim final rules, and the SBA Borrower Application
Form thus made it abundantly clear that only certain, specific types of entities were eligible for

PPP loans.  Two types of entities that were clearly and unmistakably **not** eligible for PPP loans were non-profits registered under 501(c)(5) and 501(c)(9) of the Internal Revenue Code. Eligible non-profit entities were limited to those organized under section 501(c)(3) of the Internal Revenue Code.

## V.    DEFENDANTS FALSELY CERTIFIED THAT THEY WERE ELIGIBLE FOR PPP LOANS AND COLLECTIVELY OBTAINED MORE THAN $12 MILLION IN FEDERAL MONEY.

32.    The SBA Borrower Application Form required applicants to make the following certifications, among others:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.

- **The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted** that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

(**Exhibit 2**) (emphasis added)

33.    Even though the MEA is a 501(c)(5) corporation and MESSA is a 501(c)(9) corporation, both organizations submitted PPP loan applications in April 2020 in which they certified that they were "eligible to receive a loan under the rules in effect at the time this application is submitted."

34.    As a direct result of their false certifications, MESSA was approved for a $6,130,300 PPP loan on April 28, 2020, and the MEA was approved for a $6,420,500 PPP loan on April 29, 2020. (**Exhibit 4**).

9

35.     As a direct result of their false certifications, upon information and belief, the SBA paid the Defendants' lenders a processing fee in excess of $100,000 for processing the Defendants' loan applications and disbursing payment under the PPP program.

36.     MESSA's and MEA's false certifications resulted in a reduction of PPP loan funding available to eligible recipients.

37.     In fact, many applicants who were eligible for PPP loans were unable to obtain or delayed in obtaining loans because the $349,000,000 initially appropriated for the PPP was exhausted within just 13 days.  *See* https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next   (last    accessed    on January 4, 2022).

## VI.   THE MACKINAC CENTER DISCOVERS THAT THE MEA AND MESSA FRAUDULENTLY OBTAINED PPP MONEY

38.     The SBA released data in July 2020 revealing the identity of most PPP loan recipients, as well as the amount of money each recipient received.  (**Exhibit 4**).

39.     The SBA did not release any information regarding a recipient's business type (e.g. 501(c)(3) corporation, tribal entity, etc.).  Further, certain information was not provided pursuant to FOIA exemptions 4 and 6.  Exemption 4 protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  Exemption 6 protects information when the disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

40.     On July 6, 2020, the Detroit News reported that the MEA had received a $6.4 million dollar PPP loan.  (**Exhibit 5**) According to the Detroit News, MEA spokesman Doug Pratt made the following statement to the Detroit News:

"With 285 employees across Michigan, we're proud of the fact that we've been able to do the right thing and continue to pay employees during the pandemic, despite uncertainty on the horizon...The PPP Program has helped us do that." *Id.*

41.     After learning that the MEA had obtained a PPP loan, The Mackinac Center conducted its own investigation.  The Mackinac Center reviewed the SBA loan data to confirm the report, and in so doing also learned that MESSA had also received a PPP loan.

42.     The Mackinac Center then reviewed Defendants' filings with the IRS, which revealed that the MEA is a 501(c)(5) corporation and that MESSA is a 501(c)(9) corporation.

43.     The Mackinac Center then filed a FOIA request with the SBA, requesting:

> 1.  A copy of any applications for Paycheck Protection Program ("PPP") loans by the Michigan Education Association ("MEA") and Michigan Education Special Services Association ("MESSA")...
>
>     ....
>
> 2.  Any documents in SBA's possession which demonstrate that MEA and MESSA are eligible for PPP funding, despite being 501(c)(5) and 501(c)(9) organizations respectively.
>
> 3.  Any documents in SBA's possession which demonstrate that MEA's and MESSA's eligibility for PPP funding was not independently reviewed by the SBA.
>
> 4.  Any documents provided to SBA that attest to MEA and MESSA maintain the non-profit status required to be eligible for PPP funding.

**(Exhibit 6)**

44.     The SBA responded with a letter dated October 21, 2020.  In relevant part, the SBA stated that "[a]ll publicly available information regarding PPP loans can be found at the following link: www.sba.gov/ppp....Please note, loan applications are filed and maintained with the Lender, and the Agency does not have those applications." **(Exhibit 7)**

45.    The Mackinac Center requested comment from the MEA's lender, Comerica Bank, but Comerica refused to comment.

46.    The Mackinac Center then presented the MEA with some of its findings, and requested a comment. (**Exhibit 8**)  MEA Spokesman Liz Boyd responded with the following statement on January 10, 2021 (**Exhibit 9**)

> At the time of applying for the PPP loans, we believed doing so was the right decision given the guidelines available at the time and the tremendous uncertainty facing our organizations. However, as each organization independently prepared for the loan forgiveness application and reviewed final rules promulgated after the loans were funded, the organizations each believed we would be ineligible for forgiveness. As such, both MEA and MESSA paid back the PPP loans in full prior to the end of the calendar year.

47.    After receiving the MEA's statement, The Mackinac Center reviewed the MEA's Form LM2 Labor Organization Annual Report.  The Form LM2 is an annual report that labor organizations with more than $250,000 in annual receipts must file with the U.S. Department of Labor.  The MEA filed its LM2 on November 25, 2020.  (**Exhibit 10**)  The "period covered" by the LM2 was September 1, 2019 through August 31, 2020.  (*Id.,* Box 2)  Schedule 9 of the LM2 is entitled "Loans Payable."  Under the heading of "Loans Obtained During Period C," the MEA listed a loan of $5,604,200.  Under the heading of "Loans Owed at End of Period E", the MEA revealed that it still owed $5,604,200.  (*Id.*, Schedule 9). This is clearly inaccurate, as the MEA's PPP loan was for $6,420,500, and it also reveals that the MEA had not repaid its loan as of August 2020.

48.    More tellingly, the SBA data regarding loans distributed with values over $150,000, which was updated on March 3, 2021, states that the MEA did not repay its PPP loan until January 14, 2021 — four days after The Mackinac Center asked the MEA to comment on its investigation findings. (**Exhibit** 4, Line 407841).

49.     The same SBA report does not provide any information suggesting that MESSA repaid its PPP loan.  (**Exhibit 4**, Line 407860)

50.     On November 29 2021, the MEA filed its LM2 for the period of September 1, 2020 through August 31, 2021. **(Exhibit 11)**.  Under the heading of "Loans Owed at Start of Period (B)," the MEA listed a loan of $5,604,200.  Under the heading of "Repayment During Period Cash (D)(1)", the MEA revealed that it paid $5,604,200, and claimed that it owed no more loans at the end of the period.

## VII.    CONCLUSIONS

51.     As a result of its independent investigation, The Mackinac Center reached the following conclusions:

   i.   The MEA and MESSA were ineligible for PPP funding.

   ii.  In spite of the clear limitations on which employers were eligible to participate in the PPP program, the MEA and MESSA filed borrower application forms in which they falsely certified that they were eligible for PPP loans.

   iii. As a direct result of their false claims, Defendants misappropriated more than $12 million in PPP funding.

   iv.  When confronted with the MEA's violation of the law, the MEA falsely claimed that it had returned the money.  Four days later, the MEA actually did return the money to the SBA.

   v.   There is no evidence to suggest that MESSA has yet returned its PPP funding.

52.     At the conclusion of its investigation, and prior to filing this Complaint, The Mackinac Center disclosed its findings to the United States Attorney's Office.

## COUNT I
## VIOLATION OF THE FALSE CLAIMS ACT
### 31 U.S.C. §§3729(a)(1)(A)-(B)

53. The Mackinac Center realleges and incorporates by reference the allegations contained in paragraphs 1 through 46 above as though fully set forth herein.

54. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

55. 31 U.S.C. § 3730 authorizes a private person to "bring a civil action for violation of section 3729 for the person and for the United States Government."

56. By virtue of the acts described above, including but not limited to falsely certifying that they were eligible for PPP funds, Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the United States Government for payment or approval, in violation of 31 U.S.C. § 3729.

57. By virtue of the acts described above, including but not limited to falsely certifying that they were eligible for PPP funds, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the government, in violation of 31 U.S.C. § 3729.

58. By virtue of the acts described above, including but not limited to falsely certifying that they were eligible for PPP funds, Defendants presented a false claim for money to a lender, where the money was to be spent or used on the Government's behalf or to advance a Government program or interest, and the Government has provided any portion of the money requested or will reimburse the lender for any portion of the money which is requested or demanded, in violation of 31 U.S.C. § 3729.

59. As a direct result of Defendants' false certifications, MESSA obtained $6,130,300 in PPP funding on April 28, 2020, and the MEA obtained $6,420,500 in PPP funding on April

14

29, 2020.  Defendants would not have received any money had they not falsely claimed they were eligible for funding.

60.     As a direct result of the Defendants' false certifications, the SBA paid the Defendants' lenders substantial processing fees in excess of $100,000.

61.     Through the Defendants' actions, the United States has been injured and suffered damage in a substantial amount to be determined at trial.

62.     Additionally, the United States is entitled to the maximum statutory penalty of not less than $11,655 and not more than to $23,331 for each incident of Defendants' unlawful conduct, pursuant to 31 U.S.C. § 3729(a)(1) and 28 C.F.R. § 85.5

63.     The Mackinac Center's claim is not barred by the public disclosure provision in 31 U.S.C. § 3730 because Plaintiff-Relator is an "original source" of much of the information provided in this Complaint, as described in 31 U.S.C. §§ 3730(e)(4)(A)-(B).  Although the simple fact that the Defendants had received PPP funding was publicly disclosed by the SBA, The Mackinac Center, through its extensive independent investigation, obtained knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and voluntarily provided the information to the Government before filing this action.

64.     In the alternative, even if The Mackinac Center does not qualify as an original source, the Government has the power, under 31 U.S.C. § 3730(e)(4)A), to oppose any motion to dismiss based on the public disclosure bar, and, in that circumstance, the Court may not dismiss this action.

## PRAYER FOR RELIEF

**WHEREFORE**, *qui tam* Plaintiff-Relator The Mackinac Center prays for judgment against the Defendants as follows:

15

1. That Defendants return all PPP money still within their possession, plus appropriate interest;

2. That Defendants cease and desist from violating 31 U.S.C. § 3729 *et seq.*;

3. That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $11,665 for each violation of 31 U.S.C. § 3729;

4. That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

5. That Relator be awarded all costs of this action, including attorneys' fees and expenses; and

6. That Relator recover such other relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.


MILLER JOHNSON
Attorneys for Plaintiff

Dated: January 11, 2022      By _____
           James R. Peterson (P43102)
         Business Address:
           45 Ottawa Ave. SW
           Suite 1100
           Grand Rapids, MI 49503
         Telephone: (616) 831-1700
         Email: petersonj@millerjohnson.com