# EXHIBIT B

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the U.S. Small Business Administration ("SBA") (collectively the "United States"); the Michigan Education Special Services Association ("MESSA"); and the Mackinac Center for Public Policy (the "Relator") (hereafter collectively with the United States and MESSA referred to as "the Parties"), through their authorized representatives.

RECITALS

A.	MESSA is a non-profit 501(c)(9) corporation with its principal place of business at 1475 Kendale Boulevard, East Lansing, Michigan 48826.

B.	On January 11, 2022, the Relator filed a *qui tam* action in the United States District Court for the Western District of Michigan captioned *United States ex rel. Mackinac Center for Public Policy v. The Michigan Education Association, et al.*, No. 1:22-cv-28, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action").  The Relator alleged, among other things, that MESSA submitted or caused the submission of false claims for payment in connection with the federal Paycheck Protection Program ("PPP"), which was established pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.

C.	The CARES Act, which was enacted in March 2020, was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic.  Section 1102(a)(2) of the CARES Act amended Section 7(a) of the Small Business Act, 15 U.S.C. §§ 631-657u, and authorized forgivable loans to eligible small businesses for job retention and certain other expenses,

through the PPP. To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business. The loan application requires the business to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. A PPP loan application must be processed by a participating lender. If a loan application is approved, the participating lender funds the loan using its own money, which is 100% guaranteed by the SBA. The SBA pays the lender a processing fee for each loan.

D. The United States contends that it has certain civil claims against the MESSA arising from its submission of a PPP loan application and receipt of PPP loan funds. Specifically, the United States contends MESSA was ineligible for a PPP loan at the time it applied for and received the loan in 2020. As a result of the allegedly improper application for, and receipt of, the loan, the United States contends that MESSA caused the SBA to pay the lender a processing fee. The conduct described in this Paragraph D is referred to below as the "Covered Conduct."

E. On December 23, 2020, MESSA voluntarily returned the loan, plus interest accrued to that date, to the lender.

F. This Settlement Agreement is neither an admission of liability by MESSA nor a concession by the United States that its claims are not well founded.

G. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. MESSA shall pay to the United States ONE HUNDRED TEN THOUSAND, SIX HUNDRED TWENTY-TWO DOLLARS ($110,622.00) ("Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the U.S. Attorney's Office for the Western District of Michigan no later than fourteen (14) days after the Effective Date of this Agreement.

2. Relator claims entitlement to reasonable expenses, attorney's fees, and costs pursuant to 31 U.S.C. § 3730(d)(1) against MESSA. If Relator and MESSA are unable to reach agreement on reasonable expenses, attorney's fees, and costs absent Court intervention, Relator may submit a fee petition to the United States District Court for the Western District of Michigan seeking payment of its claimed reasonable expenses, attorney's fees, and costs against MESSA.

3. Subject to the exceptions in Paragraph 5 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases MESSA from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4. Upon the United States' receipt of the Settlement Payment described in Paragraph 1 above, Relator, for itself and for its heirs, successors, attorneys, agents, and

3

assigns, fully and finally releases MESSA, along with its officers, directors, trustees, agents, and employees, from any and all claims, known or unknown, that the Relator has, or could have brought, in the Civil Action.

5. Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement; and

    f. Any liability of individuals.

6. Relator and its heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and this Civil Action, Relator and its heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the

United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relator from sharing in the proceeds of this Agreement. Moreover, the United States and Relator and its heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of its claim(s). The Relator's claim to a share of the proceeds of the settlement amount described in Paragraph 1 is addressed by separate agreement.

7. Subject to Paragraph 2 above, Relator, for itself, and for its heirs, successors, attorneys, agents, and assigns, releases MESSA, and its officers, directors, trustees, agents, and employees, from any liability to Relator arising from the filing of the Civil Action.

8. MESSA waives and shall not assert any defenses MESSA may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that this Agreement bars a remedy sought in such criminal prosecution or administrative action, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution.

9. MESSA fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that MESSA has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers,

5

agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

10. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of MESSA, and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1)    the matters covered by this Agreement;

    (2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3)    MESSA's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

    (4)    the negotiation and performance of this Agreement;

    (5)    the payment MESSA makes to the United States pursuant to this Agreement and any payments that MESSA may make to Relator, including costs and attorneys fees,

are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by MESSA, and MESSA shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

6

   c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, MESSA shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by MESSA or any of its subsidiaries or affiliates from the United States.  MESSA agrees that the United States, at a minimum, shall be entitled to recoup from MESSA any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine MESSA's books and records and to disagree with any calculations submitted by MESSA or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by MESSA, or the effect of any such Unallowable Costs on the amount of such payments.

  11. This Agreement is intended to be for the benefit of the Parties only.

  12. Upon receipt of the payment described in Paragraph 1, above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action as against MESSA pursuant to Rule 41(a)(1), with prejudice, except as provided in Paragraph 2 above.

  13. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except as provided in Paragraph 2 above.

  14. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

15. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

16. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

17. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

18. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

19. This Agreement is binding on MESSA's successors, transferees, heirs, and assigns.

20. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

21. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

22. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[SIGNATURE PAGES BELOW]

THE UNITED STATES OF AMERICA

DATED: 03/01/23          BY: _____
                              EVAN J. BALLAN
                              Trial Attorney
                              Commercial Litigation Branch
                              Civil Division
                              United States Department of Justice

                              MARK A. TOTTEN
                              United States Attorney

DATED: 3/1/23            BY: _____
                              ANDREW J. HULL
                              Assistant United States Attorney
                              U.S. Attorney's Office for the
                              Western District of Michigan

9

MICHIGAN EDUCATION SPECIAL SERVICES ASSOCIATION

DATED: 2/27/2023  BY: _____
Ross Wilson, Executive Director
MICHIGAN EDUCATION SPECIAL SERVICES ASSOCIATION


DATED: 2/28/2023  BY: _____
MICHAEL E. CAVANAUGH
RYAN K. KAUFFMAN
Fraser Trebilcock
124 W. Allegan Street, Ste. 1000
Lansing, MI 48933

*Counsel for Michigan Education Special Services Association*

RELATOR – MACKINAC CENTER FOR PUBLIC POLICY

DATED: 2/28/23      BY: _____
                         Joseph G. Lehman, President
                         MACKINAC CENTER FOR PUBLIC POLICY


DATED: 03/01/2023   BY: _____
                         JAMES R. PETERSON
                         Miller Johnson
                         45 Ottawa Ave. SW, Ste. 1100
                         Grand Rapids, MI 49503

                         *Counsel for Relator Mackinac Center for Public Policy*